J-S17004-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :         PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| ROBERT STAPLES | : |
| | : |
| Appellant | : No. 2096 EDA 2025 |

Appeal from the PCRA Order Entered July 11, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000557-2019

BEFORE: PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 22, 2026**

Robert Staples appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his Post Conviction Relief Act ("PCRA")[1] petition. On appeal, Staples challenges the stewardship of trial counsel. After careful consideration, we affirm.

Following a waiver trial, Staples was convicted of aggravated assault, strangulation, terroristic threats, criminal mischief, theft by unlawful taking, receiving stolen property, simple assault, recklessly endangering another

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

person, and false imprisonment.[2] The PCRA court summarized the facts underlying Staples' convictions as follows:

> On December 2, 2018, at approximately 5:00 A.M., [Staples'] girlfriend [("Victim")], was asleep in the bedroom of their shared apartment at 217 Elbridge Street [in Philadelphia]. [Victim] testified [that Staples] woke her and slapped her thigh when he confronted her about text messages found on her cellphone. [Victim] left the bed to dress and asked [Staples] to calm down. She walked from the bedroom into the kitchen, and [Staples] followed. [Staples] backed her against a wall and threatened to "put [his] hands on [her]." [N.T. Trial, 11/27/19, at 19. Victim] attempted to push [Staples] back and told him to get away from her. [Staples] punched her in the cheek using closed fists. [Victim] ran from the apartment and drove to a friend's house.
>
> Around 1:30 P.M. the same day, [Victim] returned to the apartment for her work uniform because she believed [that Staples had] left. [Upon entering, Victim] found [Staples] asleep in the bedroom. She gathered her belongings and searched for her purse and wallet. [Staples] approached her and punched her in her nose and teeth. [Victim was unable] to defend herself, [and Staples] continued to punch her and pull her hair [as her] head hit the kitchen counter and she fell to the floor. At that point, [Staples] placed his knees on [Victim's] forearms and threatened to kill her. [Staples] choked [Victim] with both hands and she briefly lost consciousness. When she regained consciousness, [Staples] grabbed her by the hair and began punching her upper body. [Staples] eventually released her but blocked the exit when she attempted to leave the apartment. The altercation ended when [Victim's] sister arrived.
>
> [Victim] was treated at Temple University Hospital for a neck abrasion, cheek contusion, chest wall contusion, superficial laceration to the lateral neck, and an occipital linear laceration to the scalp that required three staples to close. On December 4, 2018, she went to the police station and gave an interview. After obtaining an Emergency Protection from Abuse (PFA) Order against [Staples], [Victim] returned to the apartment with her

_____

[2] 18 Pa.C.S.A. §§ 2702(a), 2718(a)(1), 2706(a)(1), 3304(a)(5), 3921(a), 3925(a), 2701(a), 2705, and 2903(a), respectively.

sister and cousin to find her TV broken, speaker thrown into the toilet, [and] her clothes/shoes bleached and cut. [Staples] was the only other individual with a key to the apartment. After the incident, [Staples] repeatedly threatened her via email and text messages.

At trial, [Staples admitted to arguing] with [Victim] about infidelity the night before the incident. [Staples] indicated after this argument, [Victim] left the apartment. He [further testified that he] awoke at 2:00 A.M. to [Victim] shaking him, at which point a second argument about infidelity ensued. [Staples testified that Victim then] attempted to hit him, but he grabbed her hand and threw it away from his face. When [Victim] eventually hit his face, [Staples indicated that he] "mugged her" and said, "this is what you get." [*Id.* at 107. Staples] denied all other physical aspects of the altercation. [Staples] also denied destroying [Victim's] property.

Trial Court Opinion, 9/16/25, at 2-3 (record citations omitted). On March 2, 2020, Staples was sentenced to an aggregate term of 6 to 12 years' incarceration, followed by 3 years' probation. Staples did not file post-sentence motions or appeal from his judgment of sentence.

On April 15, 2020, Staples timely filed a PCRA petition seeking *nunc pro tunc* reinstatement of his direct appeal rights, which the PCRA court granted on January 18, 2022. Staples proceeded to file a notice of appeal from his judgment of sentence, challenging the sufficiency of the evidence to sustain his aggravated assault conviction. On January 3, 2023, this Court affirmed Staples' judgment of sentence. *See Commonwealth v. Staples*, 292 A.3d 1068, 2023 WL 19260 at *1 (Pa. Super. filed Jan. 3, 2023) (unpublished memorandum). Staples subsequently filed a petition for allowance of appeal

with the Supreme Court, which was denied on July 7, 2023. **See Commonwealth v. Staples**, 301 A.3d 423 (Pa. 2023) (*per curiam* order).

On April 22, 2024, Staples *pro se* filed the instant timely PCRA petition raising claims concerning the purported ineffective assistance of trial counsel. The PCRA court appointed counsel, who filed an amended petition on Staples' behalf. On May 5, 2025, the PCRA court issued notice of its intent to dismiss Staples' petition without a hearing pursuant to Pa.R.Crim.P. 907. Staples failed to file a response, and on July 11, 2025, the PCRA court entered an order dismissing his petition. Staples timely filed a notice of appeal. Both Staples and the PCRA court have complied with Rule 1925. **See** Pa.R.A.P. 1925(a), (b).

On appeal, Staples presents the following questions for our review:

Whether the PCRA court's findings are supported by the record and free of legal error [where it refused] to grant the relief requested in [Staples'] PCRA petition based upon the following:

(1) Whether trial counsel was ineffective for failing to file a post-sentence motion to reconsider sentence?

(2) Whether trial counsel was ineffective for failing to file a post-verdict motion that the verdict was against the weight of the evidence?

Appellant's Brief, at 7 (unnecessary capitalization omitted; numbering provided).

"When reviewing the dismissal of a PCRA petition, we examine whether the PCRA court's conclusions are supported by the record and free from legal error." **Commonwealth v. Hunter**, 355 A.3d 394, 413 (Pa. Super. 2026)

- 4 -

(internal quotation marks and citation omitted). A PCRA petitioner bears "the burden of persuading an appellate court that the PCRA court erred and that such error requires relief." **Id.** at 414 (brackets and citations omitted). "We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." **Commonwealth v. Baynard**, 355 A.3d 21, 24 (Pa. Super. 2026) (citation omitted).

In each issue, Staples claims that trial counsel was ineffective. A PCRA petitioner may be eligible for relief if he pleads and proves, by a preponderance of the evidence, that his conviction is the product of the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). However, "counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." **Hunter**, 355 A.3d at 414 (citation omitted).

> To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Commonwealth v. Smith*, 352 A.3d 111, 116 (Pa. 2026) (quotation marks and citations omitted). Notably, "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Hunter*, 355 A.3d at 414 (citation omitted).

In his first issue, Staples avers that trial counsel rendered ineffective assistance by failing to file a post-sentence motion for reconsideration challenging the discretionary aspects of his sentence. *See* Appellant's Brief, at 14-15.

> When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.[A.] § 9721(b), including the protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant. A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender.
>
> Additionally, the trial court must consider the sentencing guidelines. However, where the trial court is informed by a [presentence investigation ("PSI")] report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. ...
>
> The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. In conducting appellate review, this Court cannot reweigh sentencing factors and impose judgment in place of [the] sentencing court where [the] court was fully aware of all mitigating factors.

*Commonwealth v. Verma*, 334 A.3d 941, 947-48 (Pa. Super. 2025) (quotation marks, brackets, and citations omitted).

- 6 -

Staples contends that trial counsel was ineffective for failing to file a motion for reconsideration of his sentence where "[t]he sentencing court imposed an unreasonable and excessive sentence without sufficient explanation or consideration of the mitigation factors." Appellant's Brief, at 13. Specifically, Staples avers that the court did not consider that his prior record score was based on a crime that, at the time of sentencing, had been committed 18 years prior and that he "remained gainfully employed since his release." *Id.* at 14. Staples further claims the court did not consider his "strong commitment to his family" or that he was the primary caregiver of his son who has special medical needs. *Id.* Finally, Staples avers that his sentence was not justified where he "took accountability for his actions during the incident" and "immediately tried to assist the complainant after she fell and hit her head." *Id.* at 15.

We discern no abuse of discretion in the PCRA court's rejection of Staples' first ineffectiveness claim. To establish prejudice based on trial counsel's failure to file a post-sentence motion for reconsideration, Staples was required to show that the sentencing court would have granted his post-sentence motion had it been filed by counsel and imposed a more favorable sentence. **See Smith**, 352 A.3d at 116. Thus, Staples necessarily needed to establish a reasonable probability that his underlying sentencing claim would have succeeded on the merits, which is precluded by the record before us.

Contrary to Staples' contention, the court did not impose a sentence that "drastically exceeds the recommended sentence." Appellant's Brief, at 14. "It is well settled that the sentencing guidelines provide the range for an offender's minimum sentence, not the maximum sentence." **Verma**, 334 A.3d at 950 (citation omitted). Here, Staples' minimum guideline sentence range was 48 to 60 months, plus or minus 12 months. Thus, Staples' minimum sentence of 72 months fell within the sentencing guidelines, albeit in the aggravated range.

Moreover, prior to sentencing, the court reviewed, *inter alia*, Staples' PSI report, mental health evaluation, and mitigation package and heard his allocution. **See** N.T. Sentencing, 3/2/22, at 3, 15-20. Accordingly, the sentencing court was aware of all appropriate sentencing factors and considerations, including mitigating factors submitted by Staples. **See Verma**, 334 A.3d at 947. Contrary to Staples' averments, the court provided a lengthy explanation concerning its reasons for imposing Staples' sentence. **See** N.T. Sentencing, 3/2/22, at 20-23. The court was understandably troubled by the lack of remorse or willingness to accept responsibility that Staples displayed during his allocution, and in explaining these concerns, opined as follows:

> Well, I do want you to know that I listened carefully to your statements, and I hear what you're saying. It is interesting that you refer to [Victim] as the individual, the complainant, that she is a not an identity to you. You continue to blame her for what happened to her, and you fail to take responsibility for that which you did, that she somehow deserved that which occurred[.] ...

- 8 -

You continue to blame her for the fight. You admit that you were not compatible as a couple. That is evidence. You compare her to your fiancé.

It is not uncommon that people get in relationships and don't get along. They argue and fight. What it boils down to you, Mr. Staples, you are still a male, and you put your hands on her, and you choked her out to the point she could not breathe. She felt she was going to die. She lost consciousness.

When she put her hands in her hair, they came out wet with blood. And you think you should be commended, because immediately after, when you knew she was hurt, you tried to help her, like somehow you're a good Samaritan for hurting her and saying, oh wow, let me help you.

You even phrased it that somehow she got hurt, as though this was something that she incurred on her own, and you did not do this to her, that she got hurt. Like she walked outside and tripped and fell and got hurt. This isn't what happened. You put your hands on her, and that is how she was injured. That is how she became hurt. You hurt her. She didn't get hurt. You hurt her. It's not that she got hurt. You caused her injuries. This is what I cannot wrap my mind around, that somehow she is still to blame, and it's not your fault. If you have any remorse, it's not for what happened or for what you did to her, but it's the fact that you are here. It's that you're caught up in a situation, that your life is now messed up.

N.T. Sentencing, 3/2/20, at 20-22. Thus, Staples cannot establish a reasonable probability that, but for counsel's failure to file a post-sentence motion for reconsideration, he would have received a more favorable sentence. *See Smith*, 352 A.3d at 116. Accordingly, Staples' first ineffectiveness claim fails for lack of prejudice and does not merit relief.

In his second issue, Staples avers that trial counsel rendered ineffective assistance by failing to file a post-verdict motion challenging the weight of the

evidence. **See** Appellant's Brief, at 14-18. A defendant must raise a claim challenging the weight of the evidence before the trial court in an oral or written motion for a new trial at any time prior to sentencing or in a post-sentence motion. **See** Pa.R.Crim.P. 607(A). "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Kling**, 351 A.3d 1274, 1289 (Pa. Super. 2026) (citation omitted). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." **Id.** (citation omitted). To prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the trial court." **Id.** (brackets and citation omitted).

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. We defer to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

**Commonwealth v. Garcia Arce**, 352 A.3d 495, 508 (Pa. Super. 2026) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id.** at 509 (citation omitted).

Staples maintains that the court's verdict "shocks the conscience because the evidence presented at trial by the Commonwealth failed to

adequately prove [Staples'] guilt beyond a reasonable doubt" and was "contradictory and unreliable." Appellant's Brief, at 16. Staples avers that Victim's actions were inconsistent with those of a person who had been attacked because she later returned to the shared apartment to gather her belongings. *See id.* Staples further posits that Victim testified that she had taken Staples' apartment key after the incident, and thus, Staples did not have access to the apartment, which "would have made it impossible for [Staples] to destroy [Victim's] property[,]" as she alleged. *Id.* at 17. Staples also contends that inconsistencies in Victim's trial testimony and her medical records and the police report rendered her testimony unreliable. *See id.* Finally, Staples contends that the Commonwealth's sole corroborating witness was Victim's sister, who "did not view any of the alleged altercation" and had "every motive to provide testimony to ... corroborate her sister's unreliable testimony." *Id.*

The PCRA court rejected Staples' underlying weight claim upon "carefully weigh[ing] the testimony of the witnesses along with the exhibit photographs of [Vicitm's] injuries and medical records" and determined that the record contained "ample" evidence to support its verdict. Trial Court Opinion, 9/16/25, at 5. We discern no abuse of discretion in this decision. Staples' weight claim is based on his underlying contention that Victim's testimony was not credible and that the court apparently did not credit Staples' testimony. To the extent there were inconsistencies in Victim's

testimony, behavior, and the other evidence presented by the Commonwealth, the trial court, as fact-finder, was in the position to resolve these inconsistencies and "to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Garcia Arce*, 352 A.3d at 508 (citation omitted). Staples summarily discredits the testimony of Victim's sister as self-serving, without any acknowledgment that the court could have reasonably characterized his testimony as self-serving. Based on our review of the record, we disagree with Staples' contention that, in the case *sub judice*, the Commonwealth's evidence was so tenuous, vague, and uncertain that the verdict shocks the conscience, where Victim's testimony was consistent with the extensive injuries she suffered, as documented by medical personnel. *See Kling*, 351 A.3d at 1289. Thus, because Staples' underlying weight claim lacks merit, he cannot establish a reasonable probability that, but for counsel's failure to file a post-verdict motion challenging the weight of the evidence, he would have received a more favorable verdict. *See Smith*, 352 A.3d at 116. Accordingly, Staples' second ineffectiveness claim likewise fails for lack of prejudice and does not merit relief.

Based on the foregoing, we affirm the PCRA court's dismissal of Staples' petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2026